STEPHEN KELLOUGH, EMPLOYER AND PLAN ADMINISTRATOR FOR ADVISORS PENSION SERVICE, INC., HR-10 EXECUTIVE PLAN AND TRUST FOR STEPHEN KELLOUGH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kellough v. Commissioner
Docket No. 26561-92R
United States Tax Court
T.C. Memo 1995-282; 1995 Tax Ct. Memo LEXIS 281; 69 T.C.M. (CCH) 2998; 19 Employee Benefits Cas. (BNA) 1880; June 22, 1995, Filed *281 Decision will be entered for respondent. As of June 13, 1983, P had been employed for over 30 years by BBSC, and been a partner in BBMP, an Ohio general partnership composed of management personnel from BBSC since August 30, 1976. On June 13, 1983, P's employment with BBSC was terminated. P believed that his termination was in contravention of BBMP's partnership agreement, and BBSC and BBMP disagreed. In order to resolve this dispute, on August 12, 1983, P, BBSC, and BBMP entered into a settlement agreement. Pursuant to the settlement agreement, P agreed among other things not to compete with BBSC for a period of two years, and in return BBSC agreed to make severance payments to P for two years. Additionally, the agreement provided that P's interest in BBMP would be liquidated through a series of three annual payments in the amount of $ 125,000 each. P attempted to establish a self-employed qualified retirement plan under sec. 401(a), I.R.C., and contributed to this plan the third installment payment in the amount of $ 125,000 that he had received from BBMP in 1986 in liquidation of his interest in the partnership. R determined that P did not meet the requirement of being an *282 employer within the meaning of sec. 401(c)(4), I.R.C., and that P's retirement plan was not a qualified retirement plan under sec. 401(a), I.R.C. P alleges that subsequent to his termination from BBSC and BBMP, he engaged in a noncompeting beverage distributorship. The record reflects no contributions to the Plan with respect to earned income from any beverage distributorship operated by P. Held: It is appropriate to look to secs. 708, and 736, I.R.C., to determine when a partnership interest terminates for purposes of sec. 401, I.R.C. Consequently, pursuant to sec. 1.736-1(a)(6), Income Tax Regs., P was considered a partner in BBMP until he received the final payment in liquidation of his interest in the partnership. Therefore, BBMP, and not P, was P's employer within the meaning of sec. 401(c), I.R.C., and the plan was accordingly not qualified under sec. 401(a), I.R.C.
For petitioner: Marshall L. Lerner and Jerry O. Allen. For respondent: Donald K. Rogers. NIMS
NIMS
MEMORANDUM OPINION NIMS, Judge: Respondent determined that Advisors Pension Services, Inc., HR-10 Executive Plan and Trust for Stephen Kellough (the Plan) was not a qualified plan under section 401(a), *283 since petitioner was not an "employer" under section 401(c). Respondent further determined that the trust established in order to fund the Plan would no longer be exempt from Federal income tax under section 501(a). Petitioner challenges respondent's determinations by invoking the jurisdiction of this Court for a declaratory judgment pursuant to section 7428. The sole issue for our decision is whether petitioner qualifies as an employer within the meaning of section 401(c). Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. This case was submitted on the stipulated record pursuant to Rule 122. The evidentiary facts and representations contained in the administrative record are assumed to be true. Rule 217(b)(1). Petitioner resided in Columbus, Ohio, when he filed his petition. Petitioner was designated as the employer and administrator of the Plan. As of June 13, 1983, petitioner had worked for Big Bear Stores Company (the Company) for over 30 years. At some point, petitioner became an officer and a director of the Company. Additionally, *284 as of August 30, 1976, petitioner was a partner in Big Bear Management Partnership (the Partnership), an Ohio general partnership comprised of management personnel from the Company and Harts discount store chain. Petitioner's employment with the Company was terminated on June 13, 1983. Petitioner believed that he was terminated in contravention of the Partnership's agreement executed on August 30, 1976, and subsequently amended. The Company and the Partnership disagreed with petitioner that his termination was in contravention of the Partnership agreement. In order to resolve this dispute, petitioner, the Company, and the Partnership entered into a settlement agreement (the Agreement) dated August 12, 1983. The Agreement provided in pertinent part: This Agreement is made as of August 12, 1983 by and among Big Bear Stores Company, a Delaware corporation (the "Company"), Big Bear Management Partnership, an Ohio general partnership (the "Partnership"), Stephen Kellough, an individual residing in Franklin County, Ohio ("Kellough") and with respect to paragraphs 7, 8 and 10 hereof, Big Bear, Inc., a Delaware corporation ("Parent"). RECITAL WHEREAS, Kellough has been terminated *285 as an officer and director of the Company as of June 13, 1983 and as a partner of the Partnership as of June 13, 1983; and WHEREAS, Kellough believes that the foregoing terminations are contrary to the provisions of the Partnership and Management Agreement dated as of August 30, 1976 and its subsequent amendments (together called the "Partnership Agreement") and the Company and the Partnership disagree; and WHEREAS, In recognition of over thirty-two years of service to the Company, the Company, the Partnership and Kellough believe that an amicable settlement of such disagreement by the parties is desirable and in the best interests of all of the parties hereto. NOW, THEREFORE, WITNESSETH. AGREEMENT In consideration of the mutual obligations set forth in this Agreement, the parties hereto agree as follows: 1. Resignation/Termination from the Company. Kellough hereby resigns and is terminated effective June 13, 1983 as a director and officer of the Company, resigns and is terminated effective June 27, 1983 as trustee and administrator of, and from any and all other positions held with respect to, any and all employee benefit plans of the Company and its subsidiaries, and *286 resigns and is terminated effective August 27, 1983 as an employee of and from all other positions held with the Company and its subsidiaries. * * * 2. Resignation/Termination from the Partnership. Kellough hereby resigns and is terminated effective June 13, 1983 as a partner of and from all other positions held with the Partnership. 3. Payment of Salary, Fringe Benefits and Severance Pay.
(a) The Company, through August 27, 1983, shall (i) pay to Kellough his regular salary at the rate of $ 65,000 per annum, and (ii) maintain Kellough with fringe benefits (including, without limitation, life and health insurance, accrual of benefits under all pension and profit-sharing plans, use of his Company automobile and other benefits) equivalent to those which were provided for him immediately prior to June 13, 1983. The Company's obligation to pay such salary and fringe benefits shall terminate by reason of Kellough's death on or prior to August 27, 1983, with all salary and fringe benefits accrued and unpaid at the date of such death payable to his estate or other appropriate payee. (b) The Company shall make severance payments to Kellough at the rate of $ 32,500 per annum *287 for each of the Company's fiscal years ending on the last Saturday of August in 1984, 1985 and 1986, which severance payments shall be paid in thirty-six level monthly payments beginning in the month of September, 1983 and in each of the next thirty-five months thereafter. The Company's obligation to make such severance payments shall terminate upon payment in full of all monthly payments due in and before the month of Kellough's death. * * * 4. Payment of Profit Fund Distribution.
(a) Kellough and, if deceased, his legal representatives or estate, shall be paid by the Partnership, as a distributive share of income for the fiscal year ending August 27, 1983, the full share of the Profit Fund distribution to which Kellough would have been entitled for such fiscal year based upon his 7.94425% interest therein under and as described in the Partnership Agreement, without regard to the amendment and restatement thereof dated June 13, 1983 (the "Restated Partnership Agreement") or any other amendment thereof after June 13, 1983, with like effect as if Kellough had continued to be a partner through August 27, 1983. Such payment shall be paid on or before January 10, 1984, and if *288 the Partnership fails for any reason not expressly authorized by this Agreement to pay Kellough for such fiscal year by such date the amount called for by this paragraph (a) then the Company shall pay to Kellough the amount due from and unpaid by the Partnership. (b) For each of the Company's fiscal years ending in 1984, 1985 and 1986, the Partnership agrees to pay to Kellough a percentage of the Profit Fund for such fiscal year equal to 3.972125%, with such amounts payable on or before January 10, 1985, 1986 and 1987, respectively; provided, however, that: (x) if in any such fiscal year 3.972125% of the Profit Fund exceeds $ 125,000, the amount to be paid by the Partnership to Kellough from the Profit Fund for such year shall be $ 125,000, (y) if in any such fiscal year 3.972125% of the Profit Fund is less than $ 125,000, the Company shall pay to Kellough the difference between $ 125,000 and the amount paid Kellough by the Partnership for such year and (z) if the Partnership fails for any reason not expressly authorized by this Agreement to pay Kellough for such fiscal year by the applicable due date the amount called for by this paragraph (b) then the Company shall pay to Kellough *289 the amount due from and unpaid by the Partnership. (c) If Kellough should die prior to the end of the fiscal year of the Company ending in 1986, the obligations of the Partnership and the Company as set forth in paragraphs 4(a) and 4(b) shall be to pay to the estate of Kellough his pro rata portion (based upon the fractional part of the fiscal year elapsed through the date of death) of the payment to which he would otherwise have been entitled for the fiscal year of the Company in which such death occurs; provided, however, that the Partnership and the Company shall be obligated to pay to the estate of Kellough, and the estate of Kellough shall be entitled to payment of, the full amount due Kellough as provided in paragraph 4(b) for each fiscal year prior to the fiscal year of the Company in which the death occurs. * * * 11. Covenants by Kellough. Kellough covenants for the benefit of the Company and its subsidiaries that he will not, without the prior consent of the Company, for a period of two years from the date of this Agreement: (i) disclose to any person or entity any information relating to operation of the Company's retail food supermarkets or discount department stores *290 and known to Kellough to be confidential or proprietary to the Company unless such information is or becomes, through no wrongful act or omission of Kellough, disseminated or otherwise available or known to any suppliers, vendors or others in the retail food supermarket or discount department store trade or to the public; and (ii) induce others to breach or default in the performance of any obligation owed by them to the Company or any of its subsidiaries under a contract in existence as of the date hereof and known to Kellough. Subject to the provisions of paragraph 5, the sole remedy of the Company for breach of any of the foregoing covenants shall be an appropriate action at law or equity in a court of competent jurisdiction to enjoin Kellough and to recover damages resulting from such breach or to seek other remedies available to it at law or equity. * * * 14. Entire Agreement. This Agreement contains as of the date hereof the entire agreement, and supersedes any prior understandings or agreements, between either the Company and the Partnership, on one part, and Kellough on the other part, insofar as any such understanding or agreement regards the matters provided in this *291 Agreement or, if given force or effect, would adversely affect any of the rights or obligations of any of the parties hereunder. * * * 18. Recognition As Income. Payments made by the Partnership to Kellough under paragraph 4 hereof shall be treated and deemed by Kellough and the Partnership for purposes of the [Internal Revenue] Code to be payments considered as a distributive share or guaranteed payment under Section 736(a) of the Code and not payments for the interest of Kellough in partnership property under Section 736(b) of the Code. On December 21, 1984, petitioner, who was then 56 years old, adopted the Plan, to be effective as of January 1, 1984. Pursuant to the Plan, petitioner intended to retire at the age of 62. Petitioner alleges that after being terminated from the Company and the Partnership, he operated BWS, Inc., a wholesale beer and wine distributorship. For the Plan's 1986 year, petitioner contributed a payment in the amount of $ 125,422, the bulk of which was composed of a $ 125,000 payment that he had received from the Partnership pursuant to paragraph 4(b) of the Agreement. On March 8, 1987, Touche Ross & Co. sent petitioner a copy of a Schedule K-1, *292 Form 1065, Partner's Share of Income, Credits, Deductions, etc., that had been filed on petitioner's behalf with the Partnership's 1986 return. On the Schedule K-1, the $ 125,000 payment to petitioner was characterized as a partner's distributive share of ordinary income. The parties have not directed our attention to the source of the remaining $ 422 contributed to the Plan. The Partnership maintained its own qualified retirement account (the Partnership Plan) with Prudential-Bache Securities. From 1984 to 1986, the Partnership made contributions to the Partnership Plan on behalf of its partners but no contributions were made on petitioner's behalf. Sometime around June, 1989, respondent initiated an examination of the Form 5500EZ, Annual Return of One-Participant Pension Benefit Plan, that had been filed for the Plan's 1986 year. On October 16, 1990, respondent sent petitioner a "30-day letter" in which respondent proposed that the Plan did not qualify under section 401(a). On December 14, 1990, petitioner submitted a protest letter in response to the 30-day letter and requested an Appeals conference which was scheduled for April 5, 1991. On August 28, 1992, respondent's *293 Associate Chief of Appeals issued a final nonqualification letter to petitioner wherein petitioner was informed that the Plan did not qualify under section 401(a) because petitioner was not an employer within the meaning of section 401(c). Thereafter, petitioner having exhausted his administrative remedies invoked the declaratory judgment jurisdiction of this Court. The parties have argued this case on the premise that petitioner's status as "employer" under section 401(c) is to be determined on the basis of his relationship to the Partnership, and we proceed accordingly. Although the case was submitted on the stipulated record pursuant to Rule 122, petitioner still bears the burden of proof. Rules 122, 217(c)(1)(A); Service Bolt & Nut Co. Trust v. Commissioner, 78 T.C. 812, 819 (1982), affd. 724 F.2d 519 (6th Cir. 1983). Section 401(c) provides definitions and rules relating to self-employed individuals and owner-employees. Section 401(c)(1) states the conditions under which a self-employed individual is to be treated as an "employee" in connection with qualified plans under section 401(a). Section 401(c)(2) defines *294 "earned income" in connection with the definition of the term "self-employed individual." Section 401(c)(3) defines "owner-employee", and section 401(c)(5) relates to contributions on behalf of owner-employees. As previously stated, respondent challenges petitioner's status as an employer under section 401(c), and cites section 401(c)(4), which provides the following definition: (4) EMPLOYER. -- An individual who owns the entire interest in an unincorporated trade or business shall be treated as his own employer. A partnership shall be treated as the employer of each partner who is an employee within the meaning of paragraph (1). It is assumed for purposes of this case that petitioner owned the entire interest in BWS, Inc., an unincorporated trade or business. Respondent contends that the payments required to be made by the Partnership to petitioner pursuant to paragraph 4(b) of the Agreement are either distributive shares of partnership income or guaranteed payments made to a retiring partner in liquidation of the retiring partner's interest in the partnership, in either case under section 736(a). Consequently, respondent contends that under section 1.736-1(a)(6), Income *295 Tax Regs., petitioner remained a partner until the last of the liquidation payments was made, and until such time as the Partnership made the final payment, the Partnership and not petitioner was the employer under section 401(c)(4). Petitioner contends that under Ohio law his interest in the Partnership was terminated as of June 13, 1983. Petitioner further contends that the payments required to be made by paragraph 4(b) were in exchange for his covenant not to compete with the Company for two years under paragraph 11 of the Agreement, as opposed to payments in liquidation of his interest in the Partnership. Ultimately, petitioner contends that subsequent to his retirement from the Partnership as of June 13, 1983, he was a self-employed individual in the wholesale and retail food and beverage industry capable of establishing a qualified plan under section 401(a). Section 401(a) imposes a number of requirements that a retirement plan must meet in order to be qualified under that section, including a requirement that the plan be established by the beneficiary's employer. As to self-employed individuals, the determination of who is the employer under section 401(c)(4) depends on *296 the form in which a business is carried on. Section 1.401-10(e)(1), Income Tax Regs., elaborates on this principle, and provides: For purposes of section 401, a sole proprietor is considered to be his own employer, and the partnership is considered to be the employer of each of the partners. Thus, an individual partner is not an employer who may establish a qualified plan with respect to his services to the partnership. In light of the above authorities and respective positions of the parties, it is necessary to determine when petitioner's interest in the Partnership was terminated for purposes of section 401, and the nature of the payments that petitioner received from the Partnership pursuant to paragraph 4(b) of the Agreement. As to when a partner's interest in a partnership is terminated, section 1.736-1(a)(1)(ii), Income Tax Regs., provides: A partner retires when he ceases to be a partner under local law. However, for the purposes of subchapter K, chapter 1 of the Code, a retired partner * * * will be treated as a partner until his interest in the partnership has been completely liquidated. Thus, under the regulation, a partner is considered to be "retired" when *297 he ceases to be a partner under local law, but for purposes of subchapter K, chapter 1, a partner, even though retired, continues to be treated as a partner until his partnership interest has been liquidated. Subchapter K, chapter 1, of the Internal Revenue Code, entitled "Partners and Partnerships", which includes sections 701 through 761, governs the income tax treatment of partners and partnerships. Essentially, petitioner argues that in this case it is necessary to determine when petitioner's interest in the Partnership terminated for purposes of section 401, and because section 401 is not part of subchapter K, then under section 1.736-1(a)(1)(ii), Income Tax Regs., Ohio law governs the question as to when his interest in the Partnership was terminated. In other words, petitioner argues that the partnership provisions of the Code may not be engrafted onto the qualified plan provisions of the Code. Respondent counters by relying on section 1.401-10(e)(2), Income Tax Regs., which provides: "Regardless of the provision of local law, a partnership is deemed, for purposes of section 401, to be continuing until such time as it is terminated within the meaning of section 708, *298 relating to the continuation of a partnership." (Emphasis added.) Thus, while this case does not involve a partnership termination, nevertheless respondent argues that the question as to when petitioner's interest in the Partnership was terminated for purposes of section 401 is affected by the termination provisions of section 708. We agree with respondent, at least to the extent that we think it appropriate to link the provisions of Subchapter K, and specifically in this case section 708 as well as section 736(a), with those of section 401 to determine when a taxpayer ceases being a partner under the latter section. It would be surprising indeed to find a whole separate set of partnership rules in the qualified plan provisions of the Code. The logic of this approach is aptly demonstrated, we believe, by the above-quoted section of the regulations, and the discussion which follows. Section 708(a) provides as a general rule that a partnership is considered as continuing if it is not terminated. Section 1.708-1(b)(1)(i)(b), Income Tax Regs., provides that where a partnership is making payments to a retiring partner in liquidation of his interest in the partnership under section *299 736, then paragraph (a)(6) of section 1.736-1, Income Tax Regs., should be referred to. Specifically, section 1.736-1(a)(6), Income Tax Regs., provides: "A retiring partner * * * receiving payments under section 736 is regarded as a partner until the entire interest of the retiring * * * partner is liquidated." (Emphasis added.) Thus, the regulations under section 708 refer to the regulations under section 736 to determine when a retiring partner receiving liquidation payments ceases to be a partner, and thus when and whether a partnership has terminated. And as already noted, the section 401 regulations look to section 708 to make this determination for purposes of section 401. We think it equally appropriate to look to section 736 to determine when a partnership interest terminates for purposes of section 401, and we so hold. It follows that, if we also conclude that the payments required to be made by the Partnership to petitioner pursuant to paragraph 4(b) of the Agreement were payments in liquidation of petitioner's interest in the Partnership, then under section 1.736-1(a)(6), Income Tax Regs., petitioner will be considered a partner for purposes of section 401 *300 until the payments were completed. As noted previously, petitioner contends that the payments required by paragraph 4(b) of the Agreement were to be made in exchange for petitioner's covenants not to compete with the Company, as provided by paragraph 11 of the Agreement. For the reasons that follow, we disagree with petitioner, and we hold that the payments required by paragraph 4(b) were section 736(a) payments in liquidation of petitioner's interest in the Partnership. The parties to the Agreement explicitly agreed that the payments required to be made by the Partnership pursuant to paragraph 4(b) were section 736(a) payments. Specifically, paragraph 18 of the Agreement provides: Payments made by the Partnership to Kellough under paragraph 4 hereof shall be treated and deemed by Kellough and the Partnership for purposes of the [Internal Revenue] Code to be payments considered as a distributive share or guaranteed payment under Section 736(a) of the Code and not payments for the interest of Kellough in partnership property under Section 736(b) of the Code. The administrative record does not contain any evidence that the Agreement was unenforceable under Ohio law. Furthermore, *301 the administrative record does not contain any evidence that would contradict the plain meaning of paragraph 18 of the Agreement wherein the parties agreed that the payments required by paragraph 4(b) of the Agreement were to be considered as a distributive share or guaranteed payment under section 736(a). Petitioner nevertheless argues that the payments required by paragraph 4(b) were in exchange for petitioner's covenants not to compete with the Company for two years following the effective date of the Agreement. We are not persuaded by petitioner's argument for two reasons. First, the covenants contained in paragraph 11 of the Agreement ran in favor of the Company, not the Partnership. In return, pursuant to paragraph 3(b) of the Agreement, the Company agreed to make severance payments to petitioner for three years following petitioner's termination from the Company. We believe that a more reasonable interpretation of the Agreement is that the severance payments that the Company agreed to make furnished the consideration for petitioner's covenants not to compete. We point out that it was the Company, not the Partnership, that would directly benefit from petitioner's covenants. *302 Second, in petitioner's written protest filed in response to the issuance of the 30-day letter petitioner took the position that the payments required by paragraph 4(b) of the Agreement were payments in liquidation of petitioner's interest in the Partnership. Specifically, petitioner, in his written protest, stated: Under paragraph 4(b) of the Agreement, Mr. Kellough was entitled to guaranteed payments in liquidation of his interest in the Partnership to be paid to him on the last Saturday of August, in the years 1984, 1985 and 1986. Such payments were to be made by the Partnership, or if the Partnership were unable to pay, by Big Bear Stores Company. * * * This statement constitutes an admission against interest insofar as the position petitioner is now taking is concerned. Petitioner argues that denying him the ability to establish his own qualified plan conflicts directly with Congress's intent in making qualified plans available to self-employed individuals. Pursuant to section 2 of the Self-Employed Individuals Tax Retirement Act of 1962, Pub. L. 87-792, 76 Stat. 811-812, Congress enacted section 401(c) which sought to place self-employed individuals on a more equal *303 footing with those corporate employees who were participating in qualified retirement plans established by their employers. See S. Rept. 992, 87th Cong., 1st Sess. (1961), 1962-3 C.B. 310-311. In this regard, petitioner argues: With respect to the years at issue, petitioner was not a member of the Partnership and, therefore, was not, and could not be, covered by the Partnership's qualified retirement plan. After June 13, 1983, the Partnership could not have maintained petitioner in its qualified plan because, pursuant to section 401(c)(4) of the Code, it could only maintain a qualified retirement plan for its partners, which would not include petitioner. However, respondent asserts that even though petitioner could not be covered under the Partnership's plan, he also was not an employer who was entitled to maintain a qualified retirement plan. Therefore, under respondent's position, there was no employer who could establish a qualified retirement plan for petitioner in the instant case. This result is clearly contrary to the intent of Congress; and, therefore, respondent's position on this issue should be rejected. Nowhere in the record is *304 there any evidence that respondent took the position that petitioner could not have participated in the Partnership's qualified retirement plan during the years he was receiving payments in liquidation of his interest in the Partnership. In her reply brief respondent argues that "In fact, the petitioner's employer [the Partnership] provided a retirement plan for its employees. Unfortunately, the petitioner did not participate in his employer's plan." The record does not disclose whether petitioner ever attempted to remain a participant in the Partnership's plan, but his failure to do so cannot be rectified by the means petitioner has attempted to use here. We would also point out that although petitioner remained a partner until his interest in the Partnership was liquidated, he could nevertheless have established his own qualified plan with respect to a self-employed activity outside of the partnership, provided the activity did not involve providing services to the Partnership. See secs. 1.401-10(b)(3)(ii) and (e)(1), Income Tax Regs. As mentioned previously, petitioner asserts that following his departure from the Company and the Partnership he became self-employed by operating *305 a wholesale beer and wine distributorship. If this is true, then petitioner would be considered an employer under section 401(c)(4) with respect to that activity. Section 401(d)(3) provides: "Under the plan, contributions on behalf of any owner-employee may be made only with respect to the earned income of such owner-employee which is derived from the trade or business with respect to which such plan is established." (Emphasis added). But as we have already determined, the payment that petitioner contributed to the Plan was the third section 736(a) distribution that petitioner received in liquidation of his interest in the Partnership. The parties agree that the contributions to the Plan were not made with respect to earned income from a wholesale beer and wine distributorship operated by petitioner, which contributions, if made, could have brought the Plan within the ambit of section 401(d)(3). For the above reasons, we hold that the Partnership, and not petitioner, was the employer for purposes of section 401(c). To reflect this holding, Decision will be entered for respondent *306 .