T.C. Memo. 2011-110

UNITED STATES TAX COURT

MICHAEL ROSENFELD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12373-07.                    Filed May 23, 2011.

<u>Ned Leiba</u>, for petitioner.

<u>Michael W. Berwind</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DEAN, <u>Special Trial Judge</u>:  For 2003 respondent determined a deficiency in petitioner's Federal income tax of $2,609 and an accuracy-related penalty under section 6662(a)[1] of $521.80.  The

---

[1]Unless otherwise indicated, subsequent section and chapter references are to the Internal Revenue Code (Code) in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

issues for decision[2] are whether petitioner: (1) Was an independent contractor or a common law employee of the British Consulate General (BCG) in 2003; (2) overcontributed to a simplified employee pension (SEP) plan; (3) is liable for the excise tax under section 4973(a) for excess SEP plan contributions; and (4) is liable for the accuracy-related penalty under section 6662(a).

Preliminary Matters

Respondent seeks to introduce into evidence the United States Engaged Staff Handbook (Handbook) issued in 2002 by the British Embassy in Washington D.C. as Exhibit 15-R.[3] Petitioner objects to the admission of the Handbook on the grounds that it would cause confusion of the issues and constitutes hearsay. Respondent contends that the Handbook is admissible under the exception to the hearsay rule under rule 807 of the Federal Rules

---

[2]Petitioner presented no evidence and made no argument with respect to expenses reported on Schedule C, Profit or Loss From Business, that included deductions for business expenses and expenses associated with the business use of his home; the Court deems these issues conceded. See Money v. Commissioner, 89 T.C. 46, 48 (1987); Stutsman v. Commissioner, T.C. Memo. 1961-109. Petitioner's deduction for self-employed health insurance is a computational adjustment to be determined consistent with this opinion.

[3]Respondent proffered a document as a copy of the Handbook, introduced as Exhibit 4-R, obtained from a Web site during the course of his examination of petitioner's 2003 Federal income tax return. Petitioner has not stipulated its authenticity, nor has respondent provided testimony or otherwise credible evidence to demonstrate its authenticity. Accordingly, this document is inadmissible.

of Evidence, or in the alternative, under rule 106 of the Federal Rules of Evidence.[4]

The Court need not and does not decide whether the Handbook is admissible under rule 807 or 806 of the Federal Rules of Evidence. Because the Court finds for respondent without it, the Court need not consider the Handbook in reaching a decision.[5]

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of fact and the exhibits received into evidence are incorporated herein by reference. When petitioner filed his petition, he resided in California.

I. <u>Petitioner's Employment History</u>

Petitioner graduated from the University of Southern California with a master's degree in journalism and has worked as a corporate marketing executive, financial writer, and journalist for over 20 years. In 1985 he started his own consulting

---

[4]Respondent raised, in his pretrial memorandum, the possibility that the Handbook is admissible under the hearsay exception of Fed. R. Evid. 803(6). Respondent did not set forth the argument in his pretrial memorandum or offer argument post trial. The argument is deemed conceded. See <u>Money v. Commissioner</u>, <u>supra</u> at 48.

[5]Petitioner's proffer of a copy of a Handbook, issued in 2005, as evidence to provide context to the Handbook issued in 2002 is rendered moot.
Respondent reserved a hearsay exception to petitioner's letter of appointment in the event the Handbook was not received into evidence. Because the Court's decision is unaffected by the Handbook, the Court finds that it is not unfair to consider the letter of appointment without the "context" of the Handbook.

business, representing clients in a variety of professional services. In 1994 he left his consulting business to work in corporate communications and marketing. In 1999 he reestablished his business, and he continues to work as a consultant for his business.

In July or August 2003, in an effort to expand into the British investment community, petitioner met with the deputy consul general, Brian Conley (Mr. Conley), of the BCG in the United States. During the meeting Mr. Conley indicated that the BCG might be interested in using petitioner's services to promote British companies seeking to invest in the United States and to assist U.S. companies interested in investing in the United Kingdom.

After several meetings discussing petitioner's qualifications, the BCG formally offered petitioner a full-time appointment for a 3-year defined term. Petitioner signed a letter of appointment (letter) dated September 22, 2003, and was appointed at the level of "Trade Officer Grade US8". The letter provided for annual increases to his salary dependent upon satisfactory services, as determined by the BCG. The award of an annual increase could be "withheld or withdrawn for reasons of discipline or inefficiency".

The BCG, as a foreign employer of a U.S. citizen, categorized petitioner as self-employed "for tax purposes". The

BCG did not withhold taxes from petitioner's salary, and petitioner was responsible for all Federal, State, and local taxes and for self-employment taxes.

## II. The Deficiency

Petitioner timely filed a Form 1040, U.S. Individual Income Tax Return, for 2003. On Schedule C, petitioner reported total gross receipts of $109,926, total expenses of $37,280, and business use of home expenses of $6,783 for his "financial journalist corporate relations consultant" (consultant) business. As a self-employed individual, petitioner contributed to an SEP plan on the basis of his consultant earnings. Petitioner reported gross receipts from the BCG on Schedule C and also contributed to an SEP plan on the basis of these earnings.[6] In 2003 he contributed $12,242 to his SEP plan.[7]

In the notice of deficiency respondent determined in pertinent part that petitioner was: (1) A common law employee of the BCG and consequently was not entitled to report gross receipts and expenses associated with his work for the BCG on

---

[6]The record does not indicate whether petitioner established two separate SEP plans--one for his consulting firm earnings and one for his BCG earnings. Petitioner testified, however, that he believed that the BCG was a client of his consulting firm and there is no indication that he established a separate SEP plan for his BCG earnings in 2003.

[7]Petitioner testified that he "was fairly successful" at fully funding his SEP plan each year, and in fact petitioner's counsel represented that he did fully fund his SEP plan for 2003.

Schedule C for 2003; (2) subject to an excise tax pursuant to section 4973 for excess contributions to an SEP plan for 2003; and (3) liable for the accuracy-related penalty under section 6662(a) for 2003.

OPINION

## I. Burden of Proof

Petitioner has moved to shift the burden of proof to respondent, maintaining that he has satisfied the requirements under section 7491(a). Section 7491(a)(1) provides that, subject to certain limitations, where a taxpayer introduces credible evidence with respect to a factual issue relevant to ascertaining the taxpayer's tax liability, the burden of proof shifts to the Commissioner with respect to that issue.

In a case where the standard of proof is based on a preponderance of the evidence, as it is here, the Court may decide the case on the weight of the evidence and need not decide it on an allocation of the burden of proof. See FRGC Inv., LLC v. Commissioner, 89 Fed. Appx. 656 (9th Cir. 2004), affg. T.C. Memo. 2002-276; Knudsen v. Commissioner, T.C. Memo. 2007-340.

The Court, therefore, need not and does not decide the allocation of the burden of proof under section 7491(a). The outcome of this case is decided on the preponderance of the evidence and thus is unaffected by section 7491. See FRGC Inv., LLC v. Commissioner, supra. Petitioner's motion will be denied.

II. Petitioner's Employment Status

The term "employee" is not defined in the Code. Consequently, whether an individual is a common law employee is a factual question that depends on the application of common law concepts. See Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-323 (1992); Weber v. Commissioner, 103 T.C. 378, 386 (1994), affd. per curiam 60 F.3d 1104 (4th Cir. 1995); Profl. & Exec. Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988). Among the relevant factors in determining the substance of an employment relationship are: (1) The degree of control exercised by the principal over the details of the individual's work; (2) the taxpayer's investment in facilities; (3) the taxpayer's opportunity for profit or loss; (4) permanency of the relationship between the parties; (5) the principal's right of discharge; (6) whether the work performed is an integral part of the principal's business; (7) what relationship the parties believe they are creating; and (8) the provision of employee benefits. Nationwide Mut. Ins. Co. v. Darden, supra at 323-324; Weber v. Commissioner, supra at 387; Profl. & Exec. Leasing, Inc. v. Commissioner, supra at 232-233; sec. 31.3121(d)-1(c)(2), Employment Tax Regs. (setting forth criteria for identifying common law employees). No one factor is determinative. Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 752 (1989). Instead, all aspects of the relationship must

be assessed and weighted.  NLRB v. United Ins. Co., 390 U.S. 254, 258 (1968).  The Court addresses the foregoing factors below.

A.  Degree of Control

All that is necessary for a finding of control is that the principal have the right to control the details of the person's work.  McGuire v. United States, 349 F.2d 644, 646 (9th Cir. 1965); Thomas Kiddie, M.D., Inc. v. Commissioner, 69 T.C. 1055, 1058 (1978).  It is not necessary for the principal to actually exercise that control.  Potter v. Commissioner, T.C. Memo. 1994-356.  To retain the requisite control over the details of an individual's work, the employer need not stand over the individual and direct every move made by the individual.  Weber v. Commissioner, supra at 388.

Petitioner argues that he was not subject to the direction and control of the BCG.  In support, petitioner cites section 31.3121(d)-1(c)(2), Employment Tax Regs., which provides:

> if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor.  An individual performing services as an independent contractor is not * * * an employee under the usual common law rules.  Individuals such as physicians, lawyers, dentists, veterinarians, construction contractors, * * * engaged in the pursuit of an independent trade * * * in which they offer their services to the public, are independent contractors and not employees.

Petitioner argues that he is an independent contractor; he practices a public calling, and the services he provided to the

BCG were within the scope of the pursuit of his consultant business.

Petitioner testified that his supervisor provided only limited and periodic reviews of his work. He was not required to submit a timesheet or sign in when he worked on site at the BCG. Petitioner further contends that the BCG could not unilaterally alter his employment agreement; namely, it could not assign him to projects outside the scope of his professional expertise and it could not change his hours, move him to another department, prevent him from working for other clients, or require him to use its facilities.

Although petitioner alleged that he was not subject to the BCG's direction and control, petitioner admitted that the head of the consulate could ask him to prepare or stop assignments and to attend conferences and meetings. His letter of appointment also specified that increases in his annual salary would be awarded only upon satisfactory service. Furthermore, contrary to petitioner's assertions, the BCG did have the right to modify his employment arrangement. His letter of appointment explicitly stated that the BCG reserved the right to alter his conditions of service at any time.[8]  See <u>Urban Redev. Corp. v. Commissioner</u>,

---

[8]Petitioner alleges that the letter of appointment contained no specific controls that dictated the details of his work, but simply that it could change what might be required and that petitioner might or might not agree to continue rendering
<span style="float:right">(continued...)</span>

294 F.2d 328, 332 (4th Cir. 1961) (the court may reject a taxpayer's uncorroborated, self-serving testimony), affg. 34 T.C. 845 (1960); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986) (same). In addition, petitioner was required to work 40 hours per week and was not permitted to have outside business interests that could be furthered by virtue of his employment.

The Court is convinced that the BCG had the right to exercise control over petitioner's work; this factor favors respondent.

B. Investment in Facilities

Petitioner paid many of the costs associated with his work. He used his own computer and cell phone, and he used his personal check/credit card.

The BCG provided petitioner a desk, a phone, a computer, and business cards. Petitioner argues that because there is no evidence that the BCG incurred additional capital expenses to accommodate him, it is not a distinguishing factor that the BCG

---

[8](...continued)
services. Petitioner further alleges that the more relevant evidence is his own testimony in which he asserts that if the BCG had attempted to control the details of his work, "I would not have worked under those conditions. I would not have taken them on as a client." He further argues that the portion of the letter about his not having outside business interests did not apply to him.

Petitioner's testimony does not comport with the terms of the letter of appointment. Petitioner unequivocally accepted the terms of the letter of appointment when he signed the letter despite his assertions and testimony to the contrary regarding his relationship with the BCG.

provided an office space for him. Petitioner's argument ignores the legal implications of the provision of facilities, regardless of the impact on the BCG's capital expenses. If petitioner was provided facilities, whether additional costs were imposed on the BCG as a result or whether petitioner in fact used those facilities is irrelevant. Taking into consideration that petitioner paid many of the costs associated with his work and used his personal work equipment, the Court finds that this factor is neutral.

C. Opportunity for Profit or Loss

The BCG paid petitioner a fixed salary for his services as a trade officer. Petitioner testified that he submitted monthly invoices to the BCG; however, there is no evidence that the invoices were actually submitted to the BCG, that the BCG actually reimbursed petitioner, or that his monthly salary was contingent on those invoices. In fact, the evidence indicates that petitioner received his fixed monthly salary before the dates indicated on the invoices. Petitioner explained that although he was paid a fixed amount by the BCG, that practice is similar to and consistent with his standard business practice.

Although the record reflects that petitioner drafted invoices to the BCG for incurred expenses, the record does not reflect whether he submitted the invoices to the BCG, nor does

the record reflect that the BCG reimbursed petitioner for these expenses.  This factor favors respondent.

### D.  Permanency of Relationship

Petitioner signed a 3-year defined-term contract with the BCG.  The contract's renewal was solely at the discretion of the BCG, with a maximum period of 9 years or three defined terms. Petitioner's employment relationship was not defined as long term but was eligible for extension.  This factor is neutral.

### E.  Principal's Right of Discharge

During 2003 both parties could terminate the employment relationship without cause; this factor is neutral.

### F.  Integral Part of Business

The BCG presents British policies to Americans and the U.S. Government, explains American policies and views to the British Government, and promotes British interests in the United States. The BCG is also responsible for press and cultural relations and for visa and consular services.  Petitioner provided consulting and communications services related to commercial opportunities in the United States for British companies.  Petitioner's services furthered the BCG's goals.  This factor favors respondent.

### G.  Relationship Parties Believe They Created

Petitioner testified that he was hired by the BCG as an independent contractor for his consultant services.  In support,

petitioner refers to the work invoices that he submitted to the BCG. He alleges that even though he was paid a fixed salary, submitting work invoices and obtaining contracts with fixed payments were consistent with his standard business practice. Petitioner also cites the letter of appointment, which specified that he was self-employed for tax purposes.

Petitioner further argues that the phrase "Self Employed for tax purposes" in the letter of appointment did not reflect the BCG's understanding of petitioner's employment status; it does not refer to the Internal Revenue Code, and there is no reasoning given by the BCG which reflects the BCG's understanding of petitioner's employment status.

As discussed supra, the evidence does not indicate that the BCG paid petitioner a salary based on petitioner's invoices. The BCG offered petitioner a position as a trade officer at the "Grade US8" salary level.

In addition, the letter of appointment specified that the BCG would not withhold taxes from petitioner's gross salary because, as a U.S. citizen, he was categorized as self-employed for tax purposes. Section 3121(b)(11) specifically provides that, for purposes of chapter 21 Federal Insurance Act taxes, employment by a foreign Government is excepted from the term "employment". The phrase "Self Employed for tax purposes" in the letter of appointment did not reflect the BCG's understanding of

petitioner's employment status.  Rather, it reflected the tax consequences for a U.S. citizen employed by a foreign Government.[9]  The letter of appointment was unambiguous regarding petitioner's employment relationship.[10]  The BCG offered him a full-time appointment as a Trade Officer US8 with a fixed monthly salary.  The record does not reflect that the BCG intended to hire petitioner as an independent contractor.  This factor favors respondent.

---

[9]The Internal Revenue Service is unable to levy on a foreign Government the employer tax portion of Federal Insurance Contributions Act taxes; instead, citizens employed by foreign Governments are treated as self-employed individuals for purposes of Self-Employment Contributions Act taxes.  See S. Rept. 1856, 86th Cong., 2d Sess. 1960, 1960-2 C.B. 792, 795.

[10]Petitioner alleges that because the letter of appointment did not refer to the Code, the Court cannot infer that the BCG's understanding of the relationship was only tax motivated as a result of the statement that petitioner was "Self Employed for tax purposes".

While acknowledging petitioner's position, the Court notes that the letter of appointment referred to the numerous tax consequences for its employees.  This portion of the letter was not a specific reference to petitioner; rather it was a general reference to the tax consequences for any U.S. citizen employed by the BCG.  If the Court were to read the language as petitioner would have us read it, all U.S. citizens employed by the BCG would be independent contractors.  The letter of appointment also provided the tax consequences for employees that were not U.S. citizens.  It specified, generally, the tax consequences that any number of its employees might face on the basis of citizenship.

The language in the letter of appointment specifically categorized petitioner as self-employed for tax purposes because he was a U.S. citizen employed by a foreign Government.  Regardless of whether the letter of appointment specified a Code section, the parties do not dispute that petitioner's services are statutorily excepted from employment, for purposes of ch. 21, pursuant to sec. 3121(b)(11).

H.  Employee Benefits

Receipt of employee benefits is an important factor in determining whether an employer-employee relationship exists. Packard v. Commissioner, 63 T.C. 621, 632 (1975).

Petitioner testified that he did not receive sick pay, overtime pay, retirement benefits, or life insurance and received only minimal remuneration for health and dental insurance.  But in 2003 petitioner accrued annual and sick leave and had the opportunity to participate in the BCG's health insurance and pension plans but declined to do so.  See Feaster v. Commissioner, T.C. Memo. 2010-157 (the availability and not the receipt of benefits is the determinative factor); see also Weber v. Commissioner, 103 T.C. at 393-394; Colvin v. Commissioner, T.C. Memo. 2007-157, affd. 285 Fed. Appx. 157 (5th Cir. 2008). Petitioner's access to and receipt of employee benefits at the BCG further supports a finding that he was a common law employee.

Petitioner contends that on the basis of the foregoing factors the Court should find that he was an independent contractor of the BCG.  In support, petitioner cites Levine v. Commissioner, T.C. Memo. 2005-86, and argues that the facts in his case more strongly support his status as an independent contractor than did the facts support the taxpayer in Levine.

In Levine, the taxpayer entered into a personal services contract with the U.S. State Department (Department) to manage

and implement the Department's worldwide industrial hygienist field technical services program. The taxpayer provided significant explanatory evidence of her position with the Department, including her employment contract. The employment contract described, in detail, her employment duties, how she performed her duties, and how she interacted with employees and supervisors.

In contrast, petitioner provided the Court with mere generalities as to his tasks, his employment position, and the control the BCG exercised over his position.

Additional factors considered by the parties as addressed in Levine include: (1) The skill required by the worker to solve a problem; (2) the method of payment; and (3) whether the hiring party pays Social Security taxes.

Petitioner asserts that he was hired to solve a specific problem for the BCG. However, petitioner failed to demonstrate that he was hired for the purpose of providing public relations work as an independent contractor and not as a common law employee. The letter of appointment indicated that he was hired as a Trade Officer; there is no indication he was hired to fill a specified public relations function performed by his firm as an independent contractor. This factor favors respondent.

Petitioner also asserts that he was paid on a retainer basis by the BCG and that he submitted monthly invoices commensurate

with his work for the BCG.  The record indicates, however, that he was paid a fixed salary and that regardless of the invoices, petitioner was paid the same fixed salary for the months of October, November, and December.[11]

Finally, the fact that the BCG did not withhold taxes from petitioner's pay is a neutral factor for purposes of determining petitioner's employment status.  Under section 3121(b)(11), "service performed in the employ of a foreign government" is excepted from "employment" for purposes of Social Security and Medicare taxes.  See sec. 31.3121(b)(11)-1, Employment Tax Regs. Services excepted from employment do not constitute employment for tax purposes.  See. sec. 31.3121(b)-4, Employment Tax Regs. The fact that the BCG did not withhold taxes from petitioner's pay does not establish either his or the BCG's intent regarding his relationship with the BCG.

Although petitioner testified that he provided the same services to the BCG as to his other clients in 2003, the Court is unable to conclude that petitioner is not a common law employee of the BCG.  As the only material witness at his own trial, petitioner has a vested interest in the outcome of this case.  It is well settled that the Court need not accept at face value a witness's testimony that is self-interested or otherwise

---

[11]The record indicates that petitioner received his paycheck each month before the dates indicated on his monthly invoices to the BCG.

questionable.  See Archer v. Commissioner, 227 F.2d 270, 273 (5th Cir. 1955), affg. a Memorandum Opinion of this Court; Weiss v. Commissioner, 221 F.2d 152, 156 (8th Cir. 1955), affg. T.C. Memo. 1954-51; Schroeder v. Commissioner, T.C. Memo. 1986-467.

The Court is not compelled to believe evidence that seems improbable or to accept as true uncorroborated, although uncontradicted, evidence from an interested witness.  Blodgett v. Commissioner, 394 F.3d 1030, 1036 (8th Cir. 2005) (quoting Marcella v. Commissioner, 222 F.2d 878, 883 (8th Cir. 1955), affg. in part and vacating in part a Memorandum Opinion of this Court), affg. T.C. Memo. 2003-212.

None of the relevant factors discussed above support petitioner's position.  Considering the record and all the facts and circumstances, the Court concludes that petitioner was a common law employee of the BCG.

III.  Excess Contributions to a Simplified Employee Pension Plan

In 2003 petitioner contributed to an SEP plan on the basis of his earnings from both his consultant business and the BCG. Respondent challenges petitioner's deduction for excess SEP plan contributions attributable to his BCG earnings.

An SEP plan is a qualified plan pursuant to which an employer makes direct contributions to its employees' individual retirement accounts or individual retirement annuities as defined

under section 408(a) and (b).  Sec. 408(k); <u>Levine v.</u>
<u>Commissioner</u>, <u>supra</u>.

Section 404(a)(8) permits an employer to deduct certain
contributions to an employee's SEP plan.  See sec. 404(a)(8)(C),
(h) (contributions to an SEP plan on behalf of an employee within
the meaning of section 401(c)(1) shall be considered to satisfy
the conditions of section 162 or 212 to the extent such
contributions do not exceed the earned income of such individual
derived from the trade or business with respect to which such
plan is established).  For purposes of section 404(a)(8), the
term "employee" includes an individual who is an employee within
the meaning of section 401(c)(1), and the employer of such an
individual is the person treated as his employer under section
401(c)(4).

Self-employed individuals and sole proprietors are treated
as their own employers and employees for purposes of SEP plan
deductions.  See secs. 401(c), 404(h), 408(k)(7); sec. 1.401-
10(b)(2), Income Tax Regs. (for purposes of applying sections 401
through 404, if a self-employed individual is engaged in more
than one trade or business, each business shall be considered a
separate employer).  A self-employed individual shall be treated
as his own employer if he satisfies the definition of employer
under section 401(c)(4).  Secs. 402(i), 404(a)(8), 408(k)(7) (the
terms "employee" and "employer" shall have the respective

meanings given by section 401(c)); see also <u>Kellough v.
Commissioner</u>, T.C. Memo. 1995-282. Additionally, a self-employed
individual must also be his own employee and shall be treated as
such if he satisfies the definition of employee under section
401(c)(1). Sec. 408(k)(7).

Petitioner argues that he satisfies the requirements of
section 401(c) and is qualified to make and deduct contributions
to his SEP plan derived from both his consultant business and BCG
earnings.[12] Respondent does not contest that petitioner is
entitled to deduct contributions to his SEP plan from the
earnings derived from his consultant business. Therefore, the
remaining determination is whether petitioner is entitled to
deduct the contributions he made to his SEP plan with respect to
his BCG earnings.

Petitioner alleges that as an employee of a foreign
Government, he is self-employed pursuant to section 3121(b)(11)
and is treated as his own employee under section 401(c)(1) and
(2).[13] Next, he contends that even if the Court concludes that

---

[12]Sec. 1.401-10(b)(3)(i), Income Tax Regs., provides that an
individual who is a common law employee is not a self-employed
individual with respect to income attributable to such
employment, even though such income constitutes net earnings from
self-employment as defined in sec. 1402(a). Petitioner contends
that this regulation is an invalid interpretation of sec. 401(c).
The Court, however, need not reach this issue because this case
rests on the plain language of sec. 401(c).

[13]Sec. 3121(b)(11), for the purposes of ch. 21 Federal
Insurance Contribution Act taxes, excludes from the definition of
(continued...)

he is a common law employee of the BCG, as the Court has found,
he is still his own employer with respect to his BCG earnings.
Consequently, he is entitled to deduct the contributions to his
SEP plan that are attributable to his BCG earnings.

Petitioner directs the Court to section 415(c) in support of
his assertion that he satisfies the definition of employer
pursuant to section 401(c)(4).[14]

Petitioner also cites the legislative history of section
401(c) in support of his argument that he is his own employer
with respect to his BCG earnings.  Petitioner cites the House

---

[13](...continued)
"employment" any service performed in the employ of a foreign
government.

[14]Sec. 415(c) provides the contribution limits for qualified
plans such as an SEP plan.  See sec. 415(a).  Petitioner invites
the Court's attention to sec. 415(c)(3), which defines a
"participant's compensation" for purposes of determining the
limit of a contribution.  A participant's compensation is defined
as "the compensation of the participant from the employer for the
year".  Sec. 415(c) also provides a special definition of a
participant's compensation for self-employed individuals.  In the
case of a self-employed individual who is considered an employee
pursuant to sec. 401(c)(1), the participant's compensation is
defined as "'the participant's earned income (within the meaning
of section 401(c)(2)'".  Sec. 415(c).
    Petitioner contends that according to sec. 415(c), the Court
need not look to sec. 401(c)(4) for the definition of employer.
He argues that if an individual has earned income, as defined
under sec. 401(c)(2), then ipso facto he has compensation from
the employer, because in the case of a self-employed individual,
a participant's compensation under sec. 415(c) is defined as the
"compensation of the participant from the employer" and in the
case of a self-employed individual, it is defined as "the
participant's earned income".  Therefore, according to
petitioner, any argument about who is an employer is settled by
this passage.

report, which defines an employee, for purposes of retirement plan contributions, as a self-employed individual.  See H. Rept. 378, 87th Cong., 1st Sess. 89 (1961), 1962-3 C.B. 261, 279-280.

Petitioner concludes that on the basis of the legislative history a common law employee who has self-employment earnings is treated as an owner-employee and is entitled to make retirement plan contributions and deduct those contributions on the basis of the self-employment income.

Petitioner asserts that the definition of an "owner-employee" remained unchanged and that section 401(c)(3) contains the same definition of "owner-employee" as the proposed language in the House bill.  However, the codified language of section 401(c)(3) does in fact differ from that proposed in the House bill.  See H. Rept. 378, supra at 89, 1962-3 C.B. at 279-280. Section 401(c)(3) defines an owner-employee, in pertinent part, as an employee who owns the entire interest in an unincorporated trade or business.  Therefore, petitioner's assertion that the legislative history of section 401(c) supports his argument that he is his own employer with respect to his BCG earnings is in error.

Furthermore, petitioner's arguments[15] completely disregard section 401(c)(4) and the mandate of section 404(a)(8), rendering section 401(c)(4) superfluous. See sec. 402(i); <u>Weinberger v. Hynson, Westcott & Dunning, Inc.</u>, 412 U.S. 609, 633 (1973) (an interpretation that renders a statutory provision superfluous should be avoided since it would offend "the well-settled rule of statutory construction that all parts of a statute, if at all possible, are to be given effect"). The Court must make its decision in accordance with the mandate of the Code.

Accordingly, the Court turns to section 401(c)(4) to determine whether petitioner satisfies the definition of employer.

Section 401(c)(4) defines an employer as "an individual who owns the entire interest in an unincorporated trade or business". <u>Kellough v. Commissioner</u>, <u>supra</u>. While petitioner owned the entire interest in and maintained a qualified SEP plan for his consultant business, he may deduct contributions made to that SEP plan only with respect to the earned income from that business. See sec. 401(d). With respect to his work for the BCG,

---

[15]Petitioner alleges that sec. 401(c)(4) was adopted to exclude corporate owner-employees and that the term "owner-employee" is intended to exclude shareholder-employees of corporations from that definition. See sec. 401(c)(3) and (4); H. Rept. 378, 87th Cong., 1st Sess. at 89 (1961), 1962-3 C.B. 261, 279-280.

Whether sec. 401(c)(4) was adopted to exclude shareholder-employees from the definition of "owner-employee" is irrelevant, and the question still remains as to whether petitioner was his own employer with respect to his earnings attributable to the BCG.

petitioner does not satisfy the definition of employer under section 401(c) because he does not own the entire interest in the BCG.  Petitioner, as a common law employee of the BCG, does not satisfy the definition of "employer" for purposes of section 401(c)(4); he is not his own employer for purposes of his BCG earnings.  Therefore, he is not entitled to a deduction with respect to the contributions that are attributable to his BCG earnings.

IV.  <u>Section 4979[16] Excise Tax[17]</u>

Respondent determined that petitioner is liable for an excise tax of $178 for excess contributions to his Schedule C SEP plan.  Section 408(k)(6)(C)(i) provides that any excess contribution under an SEP plan shall be treated as an excess contribution for purposes of section 4979.  See sec. 4979(e)(4).  Section 4979 imposes a 10-percent[18] tax on employers who make excess contributions to an SEP plan.

Petitioner asserts that even if he did make an excess contribution to his SEP plan, he nonetheless should not be taxed for any excess contributions for 2003.  He notes that section 4973 requires that the Court determine the excess funding amount as of the close of the taxable year; i.e., 2003.[19]  Because he did not make his SEP plan contribution until 2004, petitioner

---

[16]Respondent determined that petitioner is liable for an excise tax of $178 under sec. 4973(a) for overfunding his consultant business SEP plan.  Sec. 4973 imposes a 6-percent tax on individuals who make excess contributions to individual retirement accounts (IRA), annuities, or similar plans.  An excess contribution is defined as an amount contributed to an IRA less any qualified rollovers and less the amount allowable as a deduction under sec. 219.  See secs. 4973(b)(1), 404(h), (k)(6) (C)(i).

Sec. 219, however, does not apply with respect to an employer contribution to an SEP plan.  See sec. 219(b).

[17]Petitioner alleged that respondent abandoned this issue.  Respondent raised the issue in his pretrial memorandum as well as in his reply brief; the issue was not abandoned or conceded.

[18]Respondent asserted only a 6-percent excise tax; consequently, respondent is limited to the 6-percent excise tax.

[19]Sec. 4979 contains a similar provision.  See sec. 4979(a).

suggests that any excess contribution would have been made in 2004.

Section 404 addresses this inaccurate assumption. Section 404(a) provides the general rules relating to retirement savings and specifies the time when contributions to a retirement plan are deemed made. Under section 404(a)(6), a taxpayer shall be deemed to have made a contribution for a taxable year if the contribution is made on account of the taxable year and is made not later than the time prescribed by law for filing the return for the taxable year. See also sec. 404(h)(1)(B). Accordingly, for purposes of the excise tax calculation, petitioner's 2003 SEP plan contribution, although paid in 2004, is deemed paid in 2003.[20] Therefore, petitioner's argument based on timing fails. Respondent's determination that petitioner must pay a 6-percent excise tax of $178 on the excess contribution is sustained.

V.  Accuracy-Related Penalty

Respondent determined that petitioner is liable for an accuracy-related penalty under section 6662(a). Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment attributable to any one of various factors, including negligence or disregard of rules or regulations. See sec. 6662(b)(1). "Negligence" includes any failure to make a reasonable attempt to

---

[20]Petitioner timely filed his 2003 Federal income tax return and does not contest that he computed his SEP plan contribution on the basis of his 2003 BCG and consulting firm earnings.

comply with the provisions of the Code, including any failure to keep adequate books and records or to substantiate items properly. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Under section 7491(c), respondent has the burden of production with respect to the accuracy-related penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

Section 6664(c)(1) provides an exception to the section 6662(a) penalty if it is shown that there was reasonable cause for any portion of the underpayment and the taxpayer acted in good faith. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his proper tax liability. Id. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in view of the taxpayer's experience, knowledge, and education. Id.

Reliance on the advice of a professional, such as a certified public accountant, may also constitute reasonable cause as a defense to an accuracy-related penalty if, under all the facts and circumstances, such reliance is reasonable and the taxpayer acted in good faith. Secs. 6662(a), 6664(c)(1); Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011

(5th Cir. 1990), affd. 501 U.S. 868 (1991). However, a taxpayer is not relieved from liability for the addition to tax for negligence merely by shifting the responsibility to a tax professional. Enoch v. Commissioner, 57 T.C. 781, 802 (1972). Reliance on an expert is not an absolute defense but is a factor to be considered. Freytag v. Commissioner, supra at 888. A taxpayer's reliance must be in good faith and demonstrably reasonable. Ewing v. Commissioner, 91 T.C. 396, 423 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991); Freytag v. Commissioner, supra at 888-889. In such a case, a taxpayer will be entitled to rely upon an expert's advice, even if the expert's advice should prove to be erroneous. Jackson v. Commissioner, 86 T.C. 492, 539 (1986), affd. 864 F.2d 1521 (10th Cir. 1989).

Petitioner has been a sole proprietor for many years and has paid his own Federal income and self-employment taxes. In addition to his own understanding of his relationship with the BCG, petitioner had the assistance of a tax return preparer, who had prepared his tax returns for over 25 years and prepared his 2003 return. Petitioner's tax return preparer also agreed, on his understanding of petitioner's employment relationship with the BCG, that his earnings were reportable on Schedule C. Petitioner relied, in good faith, on his tax return preparer.

Under petitioner's unique circumstances, the similarity of his consultant work to his work for the BCG, and the difficulty of the interplay between sections 3121 and 401(c), the Court finds that it was reasonable for petitioner to rely on the advice of his tax return preparer in determining that he was an independent contractor of the BCG. Therefore, respondent's determination of a section 6662(a) penalty is not sustained.

Other arguments made by the parties and not discussed herein were considered and rejected as irrelevant, without merit, or moot.

To reflect the foregoing,

<u>An appropriate order will be issued denying petitioner's motion to shift the burden of proof, and decision will be entered under Rule 155</u>.